**THE WEISS LAW GROUP, LLC**
Brett Weiss (*pro hac* Co-Counsel)
8843 Greenbelt Road, Box 299
Greenbelt, Maryland 20770
Telephone:    (301) 924-4400
Facsimile:    (240) 627-4186
brett@BankruptcyLawMaryland.com

**GRAVIS LAW, PLLC**
Amy Wilburn (WSBA #49583)
7350 Cirque Drive W, Suite 102
University Place, WA 98467
Telephone:    (253) 525-5714
AWilburn@gravislaw.com

*Counsel to the Debtor and Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**(Austin Division)**

| | |
|---|---|
| In re:<br><br>**FULTON MERCER CORPORATION,**<br><br>*Debtor.* | Case No.: 24-10505-cgb<br><br>Chapter 11 (SBRA) |

**DEBTOR'S CHAPTER 11 PLAN DATED OCTOBER MAY 27, 2024**

    **NOW COMES** Fulton Mercer Corporation, the Debtor and Debtor in Possession, by above-stated Counsel, and hereby submits to creditors this Chapter 11 Plan pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* and the Small Business Reorganization Act ("SBRA"), 11 U.S.C. §§ 1181 *et seq.* (the "Plan").

    A detailed discussion of the Plan and its implementation is found herein. The Debtor urges creditors and parties in interest to consult with counsel. Creditors and parties in interest should not rely on any representations not contained in the Plan in evaluating it.

## ARTICLE I – DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in Code §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

1.1    ***"Accounts Receivable"*** means the balance of money due the Debtor for goods or services delivered or used but not yet paid for.

1.2    ***"Administrative Bar Date"*** means the first Business Day thirty (30) days after the Effective Date and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, other than claims for counsel and Subchapter V Trustee fees and costs, except as otherwise provided in the Plan.

1.3    ***"Administrative Claim"*** means any cost or expense of administration of the Estate allowed under Code § 503(b), proof (or request or motion for payment or approval) of which is timely filed by the Administrative Bar Date.

1.4    ***"Allowed Claim"*** means a Claim against the Debtor: (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) for which a Proof of Claim has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed, or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.5    ***"Assets"*** means all property, real or personal, in which the Debtor has an interest.

1.6    ***"Avoidance Actions"*** means proceedings and causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

1.7    ***"Bankruptcy Code"*** or ***"Code"*** means Title 11 of the United States Code. Unless otherwise indicated, all section numbers refer to the Bankruptcy Code.

1.8    ***"Bankruptcy Court"*** or ***"Court"*** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or, if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9    ***"Bankruptcy Rules"*** or ***"Rules"*** means: (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10    ***"Bar Date"*** means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date for the filing of pre-petition claims against the Debtor is July 15, 2024.

1.11    ***"Business Day"*** means any day except Saturday, Sunday, or other day on which commercial banks in the State of Texas are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12    ***"Case"*** means the case commenced by the Debtor under the SBRA provisions of Chapter 11 of the Code pending in the Bankruptcy Court and bearing Case Number **24-10505-cgb.**

1.13    ***"Cash"*** means United States currency, drafts, checks, deposit accounts, or other cash equivalents.

1.14    ***"Claim"*** means a claim as defined in Code § 101(5).

1.15    ***"Claimant"*** means a Person holding a Claim against the Debtor.

1.16    ***"Class"*** means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17    ***"Collateral"*** means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18    ***"Confirmation"*** means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19    ***"Confirmation Date"*** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20    ***"Confirmation Hearing"*** means the hearing under Code §§ 1128 scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan, as it may be continued from time to time.

1.21    ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan.

1.22    ***"Creditor"*** means the holder of a Claim.

1.23    ***"Days"*** shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD., #299
GREENBELT, MD 20770
(301) 924-4400

– 3 –

1.24    *"Debtor"* means **Fulton Mercer Corporation.**

1.25    *"Disputed Claim"* means a Claim:

(a)    which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended; or

(b)    which is listed as disputed under any provision of this Plan, or

(c)    as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.26    *"Effective Date"* means the date that is thirty (30) days after the Confirmation Order becomes a Final Order.

1.27    *"Equipment"* means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.28    Reserved.

1.29    *"Estate"* means the bankruptcy estate of the Debtor.

1.30    *"Executory Contracts"* means all contracts, including unexpired leases, to which the Debtor is or was a party on the Petition Date and which were executory within the meaning of Code § 365 and which may be assumed or rejected by the Debtor.

1.31    *"Final Decree"* means the Final Order of the Bankruptcy Court that closes the Case.

1.32    *"Final Order"* means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either: (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.33    *"Inventory"* means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.34    ***"Lien"*** has the meaning set forth in Code § 101(37).

1.35    ***"Material Default"*** of the Debtor shall occur if: (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 14 calendar days after the date of receipt of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or request from the Court a determination that no default occurred.

1.36    ***"Miscellaneous Assets"*** means Assets other than Inventory, Equipment, Accounts Receivable, or Avoidance Actions.

1.37    ***"Person"*** means an individual, a corporation, an LLC, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other legal entity.

1.38    ***"Petition Date"*** means May 6, 2024, the date on which the voluntary petition for relief under the Code was filed by the Debtor.

1.39    ***"Plan"*** means this Plan, as it may be amended from time to time.

1.40    ***"Priority Claim"*** means a Claim made pursuant to Code § 507(a), other than an Administrative Claim, a Professional Claim, or a Priority Tax Claim.

1.41    ***"Priority Tax Claim"*** means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll, or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under Code § 507(a)(8).

1.42    ***"Professional"*** means any attorney, accountant, appraiser, consultant, financial advisor, or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code. For purposes of the Plan, Professional shall also mean the Subchapter V Trustee.

1.43    ***"Professional Claim"*** means any Administrative Claim for compensation or reimbursement of a Professional allowed under 11 U.S.C. § 507(a)(2) or (3) that will be paid through the Plan pursuant to 11 U.S.C. § 1191(e).

1.44    ***"Proof of Claim"*** means a proof of Claim filed pursuant to Code § 501 and Part III of the Bankruptcy Rules.

    1.45    *"Rejection Claim"* means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

    1.46    *"Schedules"* means the schedules of assets and liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

    1.47    *"Secured Claim"* means any Claim, debt, or demand against the Debtor as determined in accordance with Code § 506(a) that is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing or as otherwise expressly treated in the Plan.

    1.48    "*Subchapter V Trustee"* means **Brad W. Odell,** the appointed trustee under Code § 1183, or such successor trustee who is or shall be appointed.

    1.49    *"Unexpired Lease"* means a lease of personalty or realty that had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

    1.50    *"Unliquidated Claim"* means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

    1.51    *"Unsecured Claim"* means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with Code § 502.

**ARTICLE II - SUMMARY OF PLAN AND CONFIRMATION REQUIREMENTS**

    **A.**    *Repayment of Creditors*

    The Plan provides for payment of Administrative Claims, Priority Claims, Priority Tax Claims, and Secured Claims in full or in part, either in cash or in deferred cash payments, and provides for payments to Claimants holding Unsecured Claims in an amount equal to or greater than they would receive in the event of a Chapter 7 liquidation. Funds for implementation of the Plan will be derived from the sale of some or all of the Debtor's assets and business operations, income from the operations of its business, and cash on hand.

This document contains a detailed discussion of the Plan and its implementation. The Plan is a legal document and upon confirmation will become binding on Creditors and parties in interest. Creditors and parties in interest should read the Plan in its entirety, rather than relying on this summary. The Debtor urges Creditors and parties in interest to consult with independent counsel in connection with their analysis of the Plan.

**B.**     ***Confirmation Requirements***

If all the applicable requirements of Code § 1129(a), other than paragraphs (8), (10), and (15) of that section, are met with respect to a Plan, the Court, on request of the Debtor, shall confirm the Plan notwithstanding the requirements of such paragraphs if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1.     *Definition of Impairment.*

Under Code § 1124, a Class of Claims or Equity Interests is impaired under a plan of reorganization unless, with respect to each Claim or Equity Interest of such Class, the plan: (1) leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Equity Interest, or (2) reinstates the Claim or Equity Interest pursuant to its original terms and cures any default.

2.     *Classes Impaired Under the Plan.*

Creditors holding Claims or Equity Interests in all classified Classes except Class A are impaired under the Plan. Creditors holding Claims in Class A are unimpaired and will be paid in full or otherwise treated in accordance with the provisions of the Plan.

3.     *Requirements for Confirmation.*

To be confirmed (i.e., approved) by the Bankruptcy Court, the Plan or its proponent must (among other requirements set forth in Code §§ 1129 and 1191):

a.     Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the Case;

b.     Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation;

c.     Propose to pay each member of an impaired class of Claimants who has not accepted the Plan property at least equal in value to what the Claimant would receive if the Debtor's assets were liquidated on the date of the Confirmation Hearing, and distributed to Creditors according to their rights and priorities under law;

     d.      Propose to pay all Administrative Claims in full;

     e.      Propose to pay all Priority Claims in full in deferred payments or cash;

     f.      Propose to pay all Priority Tax Claims in full within five years after the order for relief in this case, in a manner not less favorable than the non-priority unsecured claims.

     4.     *Confirmation Hearing.*

The Bankruptcy Code requires that the Bankruptcy Court hold a Confirmation Hearing with notice to all Creditors. The Confirmation Hearing is scheduled for _____. 2024, at _____ _.m., before the Honorable Christopher G. Bradley, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas, Austin Division, Courtroom ___, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Boulevard, Austin, Texas 78701. The Confirmation Hearing may be adjourned or continued by the Bankruptcy Court without further notice except for an announcement made of the adjourned or continued date made at the Confirmation Hearing.

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. To confirm the Plan, either all classes of creditors must agree to accept the Plan (a "Consensual Plan"), or, in addition to the requirements stated *supra,* the Plan must not discriminate unfairly, and is "fair and equitable".

A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its Claims or Equity Interests. The Bankruptcy Code establishes different "fair and equitable" standards for Secured and Unsecured Claims.

With respect to a Secured Claim, a plan may be "fair and equitable" if: (1) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its liens; (2) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (1) and (3) hereof, or (3) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

Additionally, the Plan must provide that, as of the effective date of the Plan, all of the Debtor's projected disposable income to be received in the 3-year period, or such

longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the Plan, will be applied to make payments under the Plan; or the value of the property to be distributed under the Plan in such period is not less than the projected disposable income of the Debtor.

"Projected Disposable Income" is defined in non-individual cases as the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

The Debtor must show that it can make all payments under the Plan, or that there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan and the Plan provides appropriate remedies to protect the holders of claims or interests if payments are not made.

## ARTICLE III - REQUISITE DISCLOSURES

A.  *Representations Limited*

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS DOCUMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE OR REJECTION IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN. ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AT THE ADDRESS ABOVE. FOR VARIOUS REASONS, THE RECORDS OF THE DEBTOR PRIOR TO PREPARATION OF THIS PLAN MAY NOT HAVE BEEN COMPLETE AND THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS STATEMENT IS DEPENDENT ON INFORMATION AVAILABLE TO THE DEBTOR WITH THE ASSISTANCE OF COUNSEL. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY. THERE ARE NO KNOWN INACCURACIES. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR THE DEBTOR'S ATTORNEYS UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE ASSUMPTIONS OR PROJECTIONS.

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY EXCEPT WHERE STATED. THE VALUES PLACED

THEREON AND SUMMARIZED BELOW ARE THE DEBTOR'S BEST ESTIMATE OF THE VALUE OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN. THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

B.    *Background, Income and Expenses*

Heritage Funeral Homes and Crematory, with operations in San Saba, Brady, and Menard, was acquired by the Debtor in January 2020. In 2022, it purchased the remainder of Heritage's operations in Lampasas and Brownwood. Since then, it has been operating all 5 locations under the Fulton Mercer Corporation name. Heritage provides funeral planning, funeral and crematory services, and flower sales to the general public.

FMC is owned and operated by Dr. Jason Fulton and Dr. James W. Mercer. Dr. Fulton holds an associate's degree in funeral service, a bachelor's in business administration with a concentration in accounting, and a doctorate in business administration, while Dr. Mercer holds an associate's degree in funeral services, a bachelor's degree in psychology, a master's degree in forensic psychology, a doctorate in counseling psychology and a second doctorate in healthcare administration. Both have extensive experience in the funeral industry, with Dr. Mercer beginning his career in funeral service at the age of 15 at a funeral home in Lampasas, Texas, and working in the industry intermittently since then. Dr. Fulton started his career in the funeral industry at the age of 16 in Artesia, New Mexico, and has worked primarily in the funeral industry ever since.

C.    *Events Leading to Bankruptcy*

As with many other businesses, the COVID-19 pandemic posed significant financial obstacles for the Debtor, resulting in decreased income. Additionally, an employee failed to properly pay for casket purchases, resulting in a $100,000 shortfall. Finally, delays in receipt of significant tax refunds due FMC also contributed to the financial challenges that ultimately led to FMC's decision to file for bankruptcy.

D.    *Procedural Posture of the Bankruptcy Case*

On May 6, 2024, the Petition Date, the Debtor filed a voluntary petition in this Court for reorganization relief under the SBRA provisions of Chapter 11 of the Code. The Debtor continues to hold the assets of the estate as Debtor-in-Possession pursuant to Code §§ 1107(a) and 1108.

Significant during the case, were the following events:

*Date*                    *Docket  Description*

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD., #299
GREENBELT, MD 20770
(301) 924-4400

| May 8, 2024 | 13 | Appointment of Brad W. Odell as Subchapter V Trustee |
| May 10, 2024 | 22 | Motion for Relief from the Automatic Stay filed by Citizens National Bank |
| May 24, 2024 | 46 | Motion to Use Cash Collateral |

At the time of filing of the Plan, the following matters are outstanding:

- Applications for Employment of Counsel;
- Application for Employment of CPA;
- Citizens National Bank's Motion for Relief from the Automatic Stay;
- Motion to Use Cash Collateral (a preliminary agreement has been reached with IncredibleBank, the creditor in the first lien position, and it is anticipated that a Consent Order will be filed shortly).

E.     *Assets*

The Debtor's schedule of Assets (Schedules A/B) is attached as Exhibit A. The Debtor's scheduled Assets are:

1.     Eleven (11) parcels of improved and unimproved real property:

   a.     300 North Bridge Street, with a scheduled value of $1,200,000.00;
   b.     1901 W. Wallace Street, with a scheduled value of $1,000,000.00;
   c.     401 N. Kay Avenue, with a scheduled value of $785,000.00;
   d.     903 Bevans Street, with a scheduled value of $250,000.00;
   e.     800 Center Avenue, with a scheduled value of $800,000.00;
   f.     304 Blackburn, with a scheduled value of $10,000.00;
   g.     S 4 1 Fulcher S ½ of 4 0.12 ac, with a scheduled value of $1,250.00;
   h.     310 N. Bridge, with a scheduled value of $62,090.00;
   i.     2 6 Fulcher 0.23 ac, with a scheduled value of $10,000.00;
   j.     902 Bevans Street, with a scheduled value of $9,420.00; and
   k.     907 Bevans Street, with a scheduled value of $58,250.00

2.     17 motor vehicles, with a total scheduled value of $222,644.00.

3.     3 bank accounts, with a total scheduled value of $1,276.82.

4.     Accounts Receivable, of which $22,621.55 is believed to be collectable.

5.     Inventory with a scheduled value of $13,000.00.

6.     Office furnishings and equipment with a scheduled value of $35,500.00.

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD., #299
GREENBELT, MD 20770
(301) 924-4400

Commented [AW1]: I removed this and labeled it all as "personal property" at various locations with a tax assessed value of $683,320.

Commented [BW2R1]: That's fine.

Commented [AW3]: Same here.

Commented [BW4R3]: Ditto.

7.      Crematory equipment with a scheduled value of $5,000.00.

8.      Customer lists, an internet domain, and goodwill with a value of $0.00.

9.      Anticipated refund by the IRS with a scheduled value of $30,807.41.

The real property, with a cumulative value of $4,186,010.00, shall be referred to collectively herein as the "Real Property". The motor vehicles, with a cumulative value of $222,640.00, shall be referred to collectively herein as the "Motor Vehicles". The cash on hand, collectible accounts receivable, inventory, of furniture, fixtures, and equipment, and IRS credit, with a cumulative value of $109,705.78, shall be referred to collectively herein as the "Blanket Assets".

As indicated in the Chapter 7 Liquidation Analysis found in Section IV, it is estimated that, were the Debtor's case filed under Chapter 7, all general unsecured creditors would be paid in full. The Debtor, after a good-faith analysis of any such potential claims, does not intend to pursue any preference, fraudulent conveyance, or other Avoidance Actions.

F.      ***Creditors Committee/Trustee***

As a SBRA case, there is no appointment of a committee of creditors pursuant to Code § 1102(a)(3). Brad W. Odell has been appointed as the Subchapter V Trustee pursuant to Code § 1183. No other trustee or examiner has been appointed.

G.      ***Professionals***

The Debtor has retained the firm of Gravis Law, PLLC and Amy Wilburn as bankruptcy counsel, which appointment has been submitted to and is pending approval by the Court.

The Debtor has also retained the firm of The Weiss Law Group, LLC, and Brett Weiss as bankruptcy counsel, *pro hac vice,* which *pro hac vice* motion was granted by the Court on May 16, 2024, at Docket 33. An application to employ has been submitted to and is pending approval by the Court.

The Debtor has also retained as accountant for the Estate Ray, CPA, which appointment has been submitted to and is pending approval by the Court.

The Debtor plans to shortly file an Application to Employ Robert Murry, for the purposes of marketing and selling some or all of the Debtor's assets and business operations.

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD., #299
GREENBELT, MD 20770
(301) 924-4400

Prior to the filing of this case, the Debtor paid Gravis Law, PLLC into escrow a cost retainer in the amount of the $1,738.00 filing fee. No additional fee retainer was paid. The Weiss Law Group was not paid any pre-petition retainer. After paying the filing fee, neither counsel is holding any Debtor funds in escrow.[1]

Since this Plan is being filed contemporaneously with the Schedules in this case, it is unknown at this time what fees and costs will be incurred by Ms. Wilburn, Mr. Weiss, and the Subchapter V Trustee prior to confirmation. All fees and costs are subject to Court approval under Code § 330.

H.    ***Officers/Directors and Compensation***

The Debtor's officers/directors remain as before the voluntary petition was filed, with Jason Fulton, the Debtor's President and 50% shareholder, and James Mercer, the Debtor's Vice President and 50% shareholder, continuing in their respective capacities at their pre-petition salaries of $65,625.00 *per annum* for Mr. Fulton, and $0.00 *per annum* for Mr. Mercer.

I.    ***Sale of the Debtor and/or the Debtor's assets***

The Debtor will, within one year of the Petition Date, sell the Debtor and/or such of the Debtor's assets that all allowed claims may be paid in full as provided for herein on or before the one-year anniversary of the Effective Date. Such sale shall be referred to herein as "The Sale".

**ARTICLE IV – ANALYSIS OF LIQUIDATION VALUE OF THE ESTATE**

It is estimated that, were the Debtor's case filed under Chapter 7, there would be sufficient funds, after liquidation, to pay all allowed claims in full. Accordingly, as provided by Code § 1191, the Plan proposes to pay all allowed claims in full upon the sale of the Debtor and/or its assets.

As such, after payment of Administrative Claims, Priority Claims, and Priority Tax Claims, the distribution to Unsecured Creditors in a Chapter 7 liquidation would be the same as or lower than under this Plan.

**ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS**

---

[1] This is the second case filed by this Debtor in this Court. Its prior case, No. 23-10590, was filed on August 1, 2023, and dismissed by consent, without prejudice, on March 25, 2024. Pursuant to the Court's Orders, Ms. Wilburn (or her prior law firm) were paid a total of $7,110.00, Mr. Weiss a total of $28,356.50, and Eric Terry, the Subchapter V Trustee, a total of $6,267.32 for their work in that case. It is anticipated that prior to or at the time the Debtor and/or the Debtor's property is sold, Counsel will be paid a retainer or retainers, which would be held in escrow pending fee applications.

The Plan establishes 21 classes of claims, plus two categories of unclassified claims (for Administrative Claims and Priority Tax Claims). The classes of claims are identified and treated as follows:

### A.    *Unclassified Claims*

1.    *Administrative Claims.* Claimants holding allowed Administrative Claims shall receive cash equal to the amount of their allowed Administrative Claim. Allowed Administrative Claims shall be paid in full upon approval by the Court of such claim or on the Effective Date of the Plan, as applicable. Administrative Claims where all or a portion of awarded fees are being held by counsel in escrow may be paid upon allowance by the Court to the extent of such escrowed sums, with any balance to be paid as provided above.

The total unpaid Professional Fees to Debtor's counsel as of the date of this Plan are estimated to be less than $20,000.00, since this Plan is filed contemporaneously with the Schedules. As noted *supra,* there is no prepetition retainer. Additional fees will be incurred before the Effective Date. The Subchapter V Trustee's fees are estimated at approximately $1,000.00 for the same reasons. Due to the possibility of post-confirmation fees, there shall be no deadline for the filing of professional fee claims.

The Debtor is unaware of any other unpaid Administrative Claims.

B.    *Priority Taxes*.

*Priority Taxes*. There are two unclassified priority tax claims scheduled:

| | | |
|---|---|---|
| 1. | Internal Revenue Service | $40,155.55 |
| 2. | Comptroller of Public Accounts | $8,321.68 |

These claims shall be paid in full, with interest at 3% per annum, within the later of the Effective Date or the Sale, unless a different treatment is agreed to or provided for in the Plan.

### Classified Claims and Interests

A.    *Class A (Priority Claims)*: Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. Two disputed Class A claims were scheduled, for Alison Kiyo Rosoff for unpaid wages in the amount of $5,218.32, and for Ryan Harris for unpaid wages in the amount of $7,916.00. Neither has yet filed a Proof of Claim. Should a Proof of Claim be filed, it is anticipated that the Debtor will file an objection, as no wages were ever owed to these individuals by FMC. Should a Proof of Claim be filed, and should objections be unsuccessful, the Debtor shall pay such claims in full, in cash, on the Effective Date of the Plan or as soon thereafter as

the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. This class is not impaired.

B.     *Class B-1 (McCulloch County Appraisal District secured claim).* This class consists of the Secured Claim of McCulloch County Appraisal District (Proof of Claim #1) ("McCulloch") in the amount of $29,756.68 as of the Petition Date for real estate and personal property taxes, secured by a statutory lien on the Debtor's real and personal property in McCulloch County (the "McCulloch Property").

McColloch shall retain its Lien and this claim shall be paid in full, with statutory interest, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, McCulloch shall release any claim and any lien as to such claim against the McCulloch Property, and, if a lien has been filed, shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

C.     *Class B-2 (Lampasas Central Appraisal District secured claim).* This class consists of the Secured Claim of Lampasas Central Appraisal District (Proof of Claim #2) ("Lampasas") in the amount of $39,417.92 as of the Petition Date for real estate and personal property taxes, secured by a statutory lien on the Debtor's real and personal property in Lampasas County (the "Lampasas Property").

Lampasas shall retain its Lien and this claim shall be paid in full, with statutory interest, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, Lampasas shall release any claim and any lien as to such claim against the Lampasas Property, and, if a lien has been filed, shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

D.     *Class B-3 (Brown County Appraisal District secured claim).* This class consists of the Secured Claim of Brown County Appraisal District (Proof of Claim #3) ("Brown") in the amount of $82,146.66 as of the Petition Date for real estate and personal property taxes, secured by a statutory lien on the Debtor's real and personal property in Brown County (the "Brown Property").

Brown shall retain its Lien and this claim shall be paid in full, with statutory interest, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, Brown shall release any claim and any lien as to such claim against the Brown Property, and, if a lien has been filed, shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

E.     *Class B-4 (Menard County Appraisal District secured claim).* This class consists of the Secured Claim of Menard County Appraisal District (Proof of Claim #7) ("Menard") in the amount of $19,905.66 as of the Petition Date for property taxes, secured by a statutory lien on the Debtor's real and personal property in Menard County (the "Menard Property").

Menard shall retain its Lien and this claim shall be paid in full, with statutory interest, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, Menard shall release any claim and any lien as to such claim against the Menard Property, and, if a lien has been filed, shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

F.      *Class B-5 (San Saba County Appraisal District secured claim).* This class consists of the Secured Claim of San Saba County Appraisal District (Proof of Claim #9) ("San Saba") in the amount of $59,053.35 as of the Petition Date for property taxes, secured by a statutory lien on the Debtor's real and personal property in San Saba County (the "San Saba Property").

San Saba shall retain its Lien and this claim shall be paid in full, with statutory interest, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, San Saba shall release any claim and any lien as to such claim against the San Saba Property, and, if a lien has been filed, shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

G.      *Class B-6 (Citizens National Bank secured claim).* This class consists of the Secured Claim of Citizens National Bank (Proof of Claim #4) ("Citizens") in the amount of $289,345.56 as of the Petition Date, secured by a Deed of Trust on two lots bearing the address 401 N Key Avenue, Lampasas, TX 76550 (the "Citizens Property").

Citizen shall retain its Lien and this claim shall be paid in full, with interest at the contract rate, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, Citizens shall release any claim and any lien as to such claim against the Citizens Property, and shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

H.      *Class B-7 (Ally Bank secured claim).* This class consists of the Secured Claim of Ally Bank (Proof of Claim #6) ("Ally") in the amount of $39,070.99 as of the Petition Date, secured by a lien on the Debtor's 2020 Chevrolet Suburban, VIN 1GNSCHKCXLR236801 ("Vehicle #1").

Ally shall retain its Lien and this claim shall be paid all pre-petition arrearages ($9,323.99), plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. The Debtor shall resume regular monthly payments in the amount of $927.76 on June 7, 2024. This class is impaired.

I.      *Class B-8 (Ally Bank secured claim).* This class consists of the Secured Claim of Ally Bank (Proof of Claim #8) in the amount of $37,417.29 as of the Petition Date,

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD., #299
GREENBELT, MD 20770
(301) 924-4400

secured by a lien on the Debtor's 2019 Cadillac, VIN XTS2G61P5S35K9102281 ("Vehicle #2").

Ally shall retain its Lien and this claim shall be paid all pre-petition arrearages ($8,931.84), plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. The Debtor shall resume regular monthly payments in the amount of $888.74 on June 7, 2024. This class is impaired.

J.      *Class B-9 (Ally Bank secured claim).* This class consists of the Secured Claim of Ally Bank (Proof of Claim #10) in the amount of $18,946.17 as of the Petition Date, secured by a lien on the Debtor's 2019 Ford Transit T-350 XLT, VIN 1FBZX2ZG4KKB45424 ("Vehicle #3").

Ally shall retain its Lien and this claim shall be paid all pre-petition arrearages ($9,535.04), plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. The Debtor shall resume regular monthly payments in the amount of $948.76 on June 29, 2024. This class is impaired.

K.      *Class B-10 (Santander Consumer USA, Inc. secured claim).* This class consists of the Secured Claim of Santander Consumer USA, Inc. ("Santander") (No Proof of Claim filed) in the approximate amount of $25,605.48 as of the Petition Date, secured by a lien on the Debtor's 2020 Chrysler Pacifica, VIN 2C4RC1GG8LR209164 ("Vehicle #4").

Santander shall retain its Lien and this claim shall be paid all pre-petition arrearages, plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. The Debtor shall resume regular monthly payments in the amount of $691.88 on June 24, 2024. This class is impaired.

L.      *Class B-11 (Santander Consumer USA, Inc. secured claim).* This class consists of the Secured Claim of Santander Consumer USA, Inc. (No Proof of Claim filed) in the approximate amount of $21,353.38 as of the Petition Date, secured by a lien on the Debtor's 2020 Chrysler Pacifica, VIN 2C4RC1BG7LR182918 ("Vehicle #5").

Santander shall retain its Lien and this claim shall be paid all pre-petition arrearages, plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. The Debtor shall resume regular monthly payments in the amount of $577.67 on June 24, 2024. This class is impaired.

M.      *Class B-12 (IncredibleBank secured claim).* This class consists of the Secured Claim of IncredibleBank (No Proof of Claim filed) in the approximate amount of

$688,582.80 as of the Petition Date, secured by a Financing Statement and UCC-1 blanket Lien on the Blanket Assets and liens on the following vehicles:

2009 Cadillac Hearse, VIN: 1GEEHOOY69U500259
2016 Ford Explorer, VIN: 1FM5K8D87GGA87147
2015 Ford Transit, VIN: 1FTNE1ZM2FKA84404
2008 Chevrolet Uplander, VIN: 1GNDV23118D154750
2004 Chevrolet Suburban, VIN: 3GNEC16Z54Gl28431
2007 Chevrolet LL, VIN: 3GNFC16057Gl 8 S934
1996 Cadillac, VIN: 1GEFH90P7TR704935
2004 Cadillac Seville, VIN: 1GEEH90Y84U550593
2019 Cadillac Hearse, VIN: 2GEXG7U38K9501015
2019 Cadillac Escalade, VIN: 1GYS3HKJ5KR393555
2009 Chevrolet Suburban, VIN: 1GNFC1649R229988

IncredibleBank shall retain its Lien and this claim shall be paid in full, with contract-rate interest, on or before one year from the Effective Date of the Plan. Until such payment, and beginning on June 1, 2024, the Debtor shall make regular monthly payments to IncredibleBank in the amount of $6,488.63. This class is impaired.

N.      *Class B-13 (First Business Specialty Finance, LLC, secured claim).* This class consists of the Secured Claim of First Business Specialty Finance, LLC ("FBSF") (No Proof of Claim filed) in the approximate amount of $96,949.44 as of the Petition Date, secured by a Financing Statement and UCC-1 Lien on certain crematory equipment (the "Equipment"). FBSF shall retain its Lien and this claim shall be paid in full, with contract-rate interest, on or before one year from the Effective Date of the Plan. Within thirty (30) days following the payment in full of this claim, FBSF shall release any claim and any lien as to such claim against the Equipment, and shall file and record appropriate notices that the lien has been satisfied. This class is impaired.

O.      *Class B-14 (Everest Business Funding secured claim).* This class consists of the Secured Claim of Everest Business Funding ("Everest") (No Proof of Claim filed) in the approximate amount of $80,065.00 as of the Petition Date, secured by a Financing Statement and UCC-1 blanket Lien on the Blanket Assets. As the Secured Claim of IncredibleBank (Class B-12) for its prior blanket Lien reflects a Principal Balance of $132,327.33, which is greater than the value of the Assets, the Class B-13 claim is wholly unsecured and shall be treated for all purposes as a Class C claim, the Lien securing the Class B-14 claim shall be deemed void under Code § 506(d) on the Effective Date, and the Class B-14 creditor shall, within 30 days thereafter, file releases of all Liens it may have upon the Blanket Assets. This class is impaired.

P.      *Class B-15 (Grasshopper Bank secured claim).* This class consists of the Secured Claim of Grasshopper Bank ("Grasshopper") (No Proof of Claim filed) in the

approximate amount of $688,358.00 as of the Petition Date, secured by a deed of trust on the Debtor's improved real property at 300 North Bridge Street, Brady, TX 76825.

Grasshopper shall retain its Lien and this claim shall be paid all pre-petition arrearages, plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. This class is impaired.

Q.    *Class B-16 (Grasshopper Bank secured claim)*. This class consists of the Secured Claim of Grasshopper Bank ("Grasshopper") (No Proof of Claim filed) in the approximate amount of $688,358.00 as of the Petition Date, secured by a deed of trust on the Blanket Assets.

As the Secured Claim of IncredibleBank (Class B-12) for its prior blanket Lien reflects a Principal Balance of $132,327.33, which is greater than the value of the Assets, the Class B-16 claim is wholly unsecured and shall be treated for all purposes as a Class C claim, the Lien securing the Class B-16 claim shall be deemed void under Code § 506(d) on the Effective Date, and the Class B-16 creditor shall, within 30 days thereafter, file releases of all Liens it may have upon the Blanket Assets. This class is impaired.

R.    *Class B-17 (LG Funding, LLC secured claim)*. This class consists of the Secured Claim of LG Funding, LLC (No Proof of Claim filed) in the approximate amount of $62,000.00 as of the Petition Date, secured by a Financing Statement and UCC-1 Lien on accounts receivable. As the Secured Claim of IncredibleBank (Class B-12) for its prior blanket Lien (which includes the Accounts Receivable) reflects a Principal Balance of $132,327.33, which is greater than the value of the accounts receivable, the Class B-16 claim is wholly unsecured and shall be treated for all purposes as a Class C claim, the Lien securing the Class B-17 claim shall be deemed void under Code § 506(d) on the Effective Date, and the Class B-17 creditor shall, within 30 days thereafter, file releases of all Liens it may have upon the Assets. This class is impaired.

S.    *Class B-18 (PNC Bank, NA secured claim)*. This class consists of the Secured Claim of PNC Bank, NA ("PNC") (No Proof of Claim filed) in the approximate amount of $9,702.77 as of the Petition Date, secured by a lien on the Debtor's 2019 Cadillac Hearse, VIN 1GYS3GK17KR196347 ("Vehicle #6").

PNC shall retain its Lien and this claim shall be paid all pre-petition arrearages, plus any post-petition, pre-Effective Date arrearages, without interest, in a lump sum, on or before one year from the Effective Date of the Plan. The Debtor shall resume regular monthly payments on June 30, 2024. This class is impaired.

H.    *Class C-1 (General Unsecured Claims)*. Class C-1 consists of all allowed general unsecured claims against the Debtor, including any unsecured portion of Class B-14, B-16, and B-17. All Class C claims shall be paid in full, without interest, within one

year of the Effective Date of the Plan. As of the Petition Date, the Class C-1 Creditors (including those whose claims are scheduled as disputed) are believed to be:

| Creditor | Claim No. | Claim |
|---|---|---|
| First Business Specialty Finance, LLC | | $96,949.44 |
| Everest Business Funding | | $80,065.00 |
| LG Funding, LLC | | $62,000.00 |
| Uline | 5 | $1,194.78 |
| Internal Revenue Service | | $3,679.14 |
| American Hallmark | | $13,178.00 |
| American Express | | $80,000.00 |
| Aramark | | $163,511.00 |
| Batesville Casket Company | | $85,419.96 |
| Central Insurance | | $10,000.00 |
| Federated Insurance | | $27,101.20 |
| Greenleaf Cemetery Association | | $5,000.00 |
| Lamar Companies | | $4,400.00 |
| Pablo Mendez | | $8,360.00 |
| Ronnie Holloway | | $90,000.00 |
| Uline | | $1,194.78 |
| Wilbert | | $16,809.00 |
| William Itza Hernandez | | Unknown |

Confirmation of the Plan shall serve to release any holder of a Class C-1 claim as of the Petition Date of any claim or cause of action against such holder (other than defenses of setoff or recoupment). The *pro rata* share of the claimed amount of any Unsecured Claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account until a Final Order is entered. When Final Orders are entered disallowing or allowing and liquidating all Class C-1 Unsecured Claims, the remaining funds in the bank account shall be distributed to the holders of all Class C-1 claims *pro rata.* This class is impaired.

I.    *Class C-2 (Insider Claims).* Class C-2 consists of the Unsecured Claim of Jason Fulton ("Insider"). Class C-2 creditors shall be paid in full in such amounts and under such terms as may be agreed to between the Debtor and Insiders only after all payments required to be made to the Class C-1 creditors have been completed. No payments for pre-petition Insider claims shall be made by the Debtor until all payments required to be made to the Class C-1 creditors have been completed. This class is impaired, but may not vote on the Plan.

**ARTICLE VI - IMPLEMENTATION OF PLAN**

A.      Funds for implementation of the Plan will be derived from the sale of some or all of the Debtor's assets and business operations, cash on hand and business income.

The Debtor has engaged the services of a business broker, Robert Murry, for whom an application for employment will shortly be hired, for the purposes of marketing and selling some or all of the Debtor's assets and business operations.

B.      The Debtor shall retain the Assets of the Estate (except as otherwise provided in this Plan) and shall therewith operate its business and pay ordinary business and operating expenses while paying creditors the amounts set forth in this Plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue their claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

### ARTICLE VII – TAX CONSEQUENCES OF PLAN

The Debtor is not qualified to advise creditors of the specific tax ramifications to them of confirmation of the Plan, and therefore makes no representations in this regard. However, the Debtor is not aware of any potential material federal tax consequences to creditors that would result from confirmation of the Plan. Each creditor is urged to consult with a tax advisor as to such matters.

No material tax consequences to the Debtor are anticipated as a result of confirmation of the Plan. Any forgiveness of indebtedness would be exempt from taxation under IRC § 108.

### ARTICLE VIII – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any prepetition Executory Contracts and Unexpired Leases in effect as of the Effective Date and not specifically rejected, assumed, or assumed and assigned will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Executory Contracts and Unexpired Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Unexpired Lease. Absent the filing of a Proof of Claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, or the Estate, Assets, or properties. All Rejection Claims shall be Class C-1 General Unsecured Claims.

### ARTICLE IX – RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor and the Debtor's operations for the following purposes until the Court enters an Order closing the case:

A.      To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B.      To hear and determine all adversary proceedings and contested matters including any Avoidance Actions;

C.      To allow and approve or disapprove any Administrative Claims not previously allowed;

D.      To determine and resolve questions concerning the existence of defaults under the Plan;

E.      To modify the Plan pursuant to Code § 1193;

F.      To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G.      To issue any Order necessary to carry out the Plan.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtor to manage the Debtor's financial affairs, including the use, acquisition, disposition, or lease of assets, without further Order of the Court, and shall permit the Debtor, in the Debtor's discretion, to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtor's assets, without further Order of the Court.

### ARTICLE X – MODIFICATION OR WITHDRAWALS OF PLAN

The Debtor may alter, amend, or modify the Plan under Code § 1193 at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of Code §§ 1122 and 1123, with the exception of subsection (a)(8) of § 1123. Following the Confirmation Date but before the Effective Date, the Debtor may also alter, amend, or modify the Plan under Code § 1193. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any

way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the Plan may be modified pursuant to Code § 1193.

## ARTICLE XI –DEFAULT

A.    *Administrative Claims, Priority Claims, and Priority Tax Claims.* In the event of an uncured Material Default as to an allowed Administrative Claim, Priority Claim, or Priority Tax Claim, the holder of such Claim may bring an action against the Debtor in a court of competent jurisdiction, including filing a motion to dismiss or convert the Case to Chapter 7. If such an action is commenced, such holder may recover all amounts due and to become due to it under the Plan.

B.    *Secured Claims.* In the event of an uncured Material Default as to an allowed secured claim, and in the absence of an order prohibiting the holder of the allowed secured claim from proceeding with its contractual rights, the holder of such claim may proceed in accordance with the underlying agreement or agreements between the claimant and the Debtor, as modified by the Plan.

C.    *General Unsecured Claims.* In the event of an uncured Material Default as to an allowed general unsecured claim, the holder of such claim may bring an action against the Debtor in a court of competent jurisdiction. If such an action is commenced, such holder may recover all amounts due and to become due to it under the Plan.

## ARTICLE XII – MISCELLANEOUS PLAN PROVISIONS

A.    **Unnegotiated Checks and Unclaimed Funds.**

Payments issued to persons holding allowed claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any payment mailed to said address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor, and the holder of the allowed claim shall have no further claim to such funds. The Debtor shall not make further payments to the holder of an allowed claim whose prior payment has been retained by the Debtor as provided for under this paragraph.

B.    **Retention of Jurisdiction, Closing.**

Pursuant to Code §§ 105(a) and 1142, the Plan provides for the Court to retain exclusive jurisdiction over all matters relating to the Plan, including the allowance of Claims and the adjudication of any Avoidance Actions.

Upon substantial consummation of the Plan, the Case shall, upon motion and Court Order, be closed, but shall be subject to reopening without the payment of the reopening fee to enter a discharge.

C. ***Post-Confirmation Operating Reports.***

After the Effective Date and while the case remains open, and as required by the Court and/or the United States Trustee, the Debtor shall provide the United States Trustee with post-confirmation quarterly reports that shall include all of its respective disbursements for that quarter.

D. ***Disbursing Agent.***

The Debtor shall act as disbursing agent to make the required distributions under the Plan.

E. ***Collection Actions.***

No creditor may take any collection action against Debtor or property of the estate so long as Debtor is not in Material Default in performing the Debtor's obligations to such creditor under the Plan.

F. ***Vesting.***

If confirmed under Code § 1191(a), on the Effective Date all Assets of the Estate shall revest in the Debtor free and clear of all Liens except those specifically set forth in the Plan or as otherwise provided in the Plan. If confirmed under Code § 1191(b), the Assets of the Estate shall not revest in the Debtor on the Effective Date and such Assets shall include the property described in 11 U.S.C. § 1186.

G. ***Replacement of Obligations.***

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

## ARTICLE XIII - DISCHARGE

If the Plan is confirmed under Code § 1191(a), on the Effective Date the Debtor will be discharged from any debt that arose before Confirmation of this Plan to the extent

THE WEISS LAW
GROUP, LLC
8843 GREENBELT RD., #299
GREENBELT, MD 20770
(301) 924-4400

– 24 –

specified in Code § 1141(d)(1)(A). Notwithstanding, the Debtor will not be discharged from any debt imposed by this Plan. If the Plan is confirmed under Code § 1191(b), Confirmation of the Plan does not discharge any debt provided for by this Plan until the Court grants a discharge upon the completion of all payments due to the Class C-1 creditors Payments on the Class B claims shall not be deemed "payments under the plan" for purposes of Code § 1141(d)(5)(A), such that the Debtor shall, upon Court Order, be entitled to its discharge upon completion of payments to the Class C-1 creditors.

Date: May 27, 2024                    Respectfully Submitted,

                                      THE WEISS LAW GROUP, LLC


                                      By:    /s/ Brett Weiss_____
                                             BRETT WEISS

                                      GRAVIS LAW, PLLC


                                      By:    /s/ Amy Wilburn_____
                                             AMY WILBURN